UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAN NEIL, CORIE BROWN, HENRY )
WEINSTEIN, WALTER ROCHE, JR., )
MYRON LEVIN and JULIE MAKINEN, )
individuals, on behalf of themselves and )
on behalf of all others similarly situated, )
)
     Plaintiffs, )
)
    v. ) No. 08 C 6833
)
SAMUEL ZELL; GREATBANC TRUST ) Judge Rebecca R. Pallmeyer
COMPANY, a Delaware corporation; )
EGI-TRB, L.L.C, a Delaware corporation, )
)
     Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, participants in Tribune Company's Employee Stock Ownership Plan ("ESOP"), seek partial summary judgment on one of their claims against Defendant GreatBanc, the plan's fiduciary. In its earlier ruling on a motion by all Defendants for dismissal, the court concluded that Plaintiffs had successfully stated a claim that GreatBanc violated its fiduciary duty when it approved a stock purchase by the ESOP that was a prohibited transaction. Plaintiffs now move for summary judgment on that portion of their claim alleging that GreatBanc engaged in a prohibited transaction. For the reasons that follow, Plaintiffs' motion is granted.

## BACKGROUND

The court's earlier order contains a detailed description of the transactions that transformed Tribune from a publicly traded company to a private employee-owned one that is now in bankruptcy. *Neil v. Zell*, 677 F. Supp. 2d 1010, 1015-18 (N.D. Ill. 2009). The transaction at issue in Plaintiffs' motion is the ESOP's purchase from Tribune on April 1, 2007 of 8,928,571 newly issued unregistered shares of Tribune for $28 per share. (Pls' 56.1(a)(3) Statement ¶ 11.) In exchange for the shares, the ESOP gave Tribune a promissory note in the principal amount of $250 million

to be paid over 30 years. (Def's 56.1(b)(3)(C) ¶ 11.) In addition to being unregistered, the shares were subject to a trading limitation. In approving this purchase, GreatBanc agreed that the shares would be transferable only pursuant to a public offering registered under the Securities Act of 1933, under Rule 144 or 144A of the Securities and Exchange Commission, or some other, unspecified, legally available means of transfer. (ESOP Purchase Agreement, GreatBanc's Ex. B § 7(a).) More than 240 million shares of Tribune stock were available for public trade on the New York Stock Exchange at the time of the transfer, but starting April 25, 2007, Tribune began a tender offer to repurchase up to 126 million publicly traded shares. (Pls' 56.1(a)(3) Statement ¶¶ 13-14.) Following the stock repurchase, Tribune merged with the ESOP and all Tribune shares not held by the ESOP were retired or cancelled, making the ESOP Tribune's sole shareholder. (Def's 56.1(C) ¶¶ 18, 33, 36, 38.)

Plaintiffs' complaint includes several allegations against Defendant GreatBanc and against Defendants Samuel Zell and EGI-TRB, but their current motion for summary judgment is addressed only to their claim that by agreeing to the initial transfer of stock to the ESOP, GreatBanc violated its fiduciary duties.

## ANALYSIS

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "On a motion for summary judgment, the district court must construe all facts and draw all reasonable inferences in favor of the non-movant." *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

**I.     ERISA § 408(e) Incorporates IRC § 409(l)**

As the court explained in its earlier order, ESOPs are exempt from ERISA's bar on the purchase of employer stock so long as the purchase meets certain requirements. *Neil*, 677 F. Supp. 2d at 1025. One of those requirements is that the company stock purchased must satisfy

the Tax Code's definition of "qualifying employer securities." That is, it must be "common stock issued by the employer . . . which is readily tradable on an established securities market." IRC 409(l), 26 U.S.C. § 409(l). The application of the Tax Code's definition is required by a complicated set of cross-references that begins with the ERISA provision setting forth the requirements for a plan to qualify for the exception from the ban on purchasing employer stock:

> Under ERISA § 408(e), 29 U.S.C. § 1108(e), to qualify for the exception, the plan must pay adequate compensation, and it must be an eligible individual account plan as defined in ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3). One such eligible individual account plan is an ESOP, which is defined in the same section as an "individual account plan-(A) which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of Title 26, and which is designed to invest primarily in qualifying employer securities, and (B) *which meets such other requirements as the Secretary of the Treasury may prescribe by regulation.*" ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6) (emphasis added). Those other requirements are found at 29 C.F.R. § 2550.407d-6, but subsection (c) of that regulation requires an ESOP to meet yet more requirements that the Treasury Secretary can prescribe under certain Internal Revenue Code provisions. *See* IRC § 4975(e)(7)(B), 26 U.S.C. § 4975(e)(7)(B). Those other requirements are listed at 26 C.F.R. § 54.4975-11, which lists conditions for an ESOP including satisfying IRC § 4975(e)(7)(A), 26 U.S.C. § 4975(e)(7)(A). That subsection requires the plan to qualify under IRC § 409(l), 26 U.S.C. § 409(l), which mandates that the securities purchased by an ESOP be "common stock issued by the employer . . . which is readily tradable on an established securities market." *Id.* § 409(l)(1).

*Neil*, 677 F. Supp. 2d at 1026-27. GreatBanc, without acknowledging that the court has already ruled on the matter, takes issue with the court's stroll along this admittedly confusing path.

First, GreatBanc argues against the court's reading of 26 C.F.R. § 54.4975-11, a provision containing requirements that the Secretary of the Treasury has prescribed for a plan to constitute an ESOP. (GreatBanc's Br., at 12-13.) According to GreatBanc, that provision does not address the requirement that an ESOP purchase "employer securities" or "qualifying employer securities." (*Id.*) GreatBanc is correct that the section itself does not address the requirement. As the court explained earlier, however, that section incorporates a provision of the Tax Code, which itself incorporates another provision of the Tax Code that does indeed discuss "employer securities" and "qualifying employer securities." Section 54.4975-11 states that to be an ESOP, "a plan described

3

in section 4975(e)(7)(A) must meet the requirements of this section." The referenced section is IRC § 4975(e)(7)(A), 26 U.S.C. § 4975(e)(7)(A), which states that an ESOP must be "designed to invest primarily in qualifying employer securities." A definition of "qualifying employer securities" is found within the same section of the Tax Code. IRC § 4975(e)(8), 26 U.S.C. § 4975(e)(8). The court did not explicitly mention the connection to IRC § 4975(e)(8) in its earlier order, and GreatBanc now argues against that connection, suggesting that because § 54.4975-11 mentions § 4975(e)(7) but not § 4975(e)(8), the regulation does not incorporate § 4975(e)(8)'s definition of "qualifying employer securities." (GreatBanc's Br., at 13.) The court concludes that argument must be rejected because it is impossible to read § 4975(e)(7) without incorporating the definition of one of its terms that is found in the same statutory subsection. As Plaintiffs note, sections of the Tax Code that refer to terms outside of the Tax Code do so explicitly. *E.g.,* IRC § 4975(e)(3)(C), 26 U.S.C. § 4975(e)(3)(C) (referencing ERISA's definition of "fiduciary"); IRC § 4975(d)(16)(A), 26 U.S.C. § 4975(d)(16)(A) (referencing Federal Deposit Insurance Act's definition of "depository institution holding company").

Thus, the court stands by its determination that 26 C.F.R. § 54.4975-11 requires an ESOP to be designed to invest primarily in "qualifying employer securities," as that term is defined in IRC § 4975(e)(8), 26 U.S.C. § 4975(e)(8). That section defines "qualifying employer securities" to mean "any employer security within the meaning of Section 409(l)." Finally, IRC § 409(l)(1), 26 U.S.C. § 409(l)(1), provides the following general definition for "employer securities": "common stock issued by the employer . . . which is readily tradable on an established securities market."

In another challenge to the court's interpretation of § 54.4975-1, GreatBanc urges that the provision is meant to impose "other requirements" onto ERISA, not to override requirements already established by ERISA. (GreatBanc's Br., at 12-13.) ERISA's definition of "qualifying employer securities" is found in ERISA § 407(d)(5), 29 U.S.C. § 1107(d)(5), and includes "stock" without any qualifications. GreatBanc asserts that it would not make sense for Congress to refer to Treasury

4

Department regulations that create other requirements to reinterpret ERISA's existing definition of "qualifying employer securities." Congress did not in fact specifically refer to Treasury Department regulations, however. Instead, in ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6), Congress gave the Secretary of the Treasury the power to promulgate regulations supplementing the statutory requirements for ESOPs. One could argue that it would not be sensible for Congress to adopt different definitions of "qualifying employer securities" in ERISA and in the Tax Code. The regulation at issue thus serves the purpose, albeit in a less than direct manner, of repairing that inconsistency by applying the Tax Code's definition onto ERISA. The court therefore disagrees with GreatBanc's assertion that the court has created a conflict between the different definitions. (GreatBanc's Br., at 13.) On the contrary, the court's reading resolves the conflict. Things would be more complicated if the Tax Code's definition of "qualifying employer securities" contradicted ERISA's definition, but it does not. The Tax Code's definition merely adds requirements to ERISA, and that is exactly what is contemplated by ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6).

GreatBanc also points to other sources in support of its challenge to the court's understanding of the statutes and regulations. First, GreatBanc argues that applying the Tax Code's definition of "qualifying employer security" is inconsistent with ERISA § 408(b)(3), 29 U.S.C. § 1108(b)(3), which exempts from the definition of prohibited transaction certain loans to ESOPs. (GreatBanc's Br., at 14.) Under that provision, "[i]f the plan gives collateral to a party in interest for such loan, such collateral may consist only of qualifying employer securities (as defined in section 1107(d)(5) of this title)." *Id.* GreatBanc argues that using ERISA's definition of "qualifying employer securities" for purposes of ERISA § 408(b)(3), 29 U.S.C. § 1108(b)(3) is inconsistent with using the Tax Code's definition for purposes of ERISA § 408(e), 29 U.S.C. § 1108(e). Any inconsistency is not a function of the court's reading, however; it is a function of Congress's decision, in ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6), to allow the Secretary of the Treasury to prescribe by regulation other requirements for a plan to be considered an ESOP, but not to make similar

5

allowances in § 408(b)(3). Even if the court were to agree that this outcome is illogical, it is bound by it.

Next, GreatBanc attempts to rely on advisory opinions from the IRS Chief Counsel and from the Department of Labor. (GreatBanc's Br., at 14-16.) The court does not interpret those advisory opinions as GreatBanc does, however. The IRS Chief Counsel's opinion concludes that "the [IRC] § 409(l) definition of employer securities is applicable for purposes of the definition of an ESOP under § 407(d)(6) of ERISA." IRS Chief Counsel Advice 200109010, 2001 WL 206410 (Nov. 24, 2000). That is exactly the conclusion that the court has reached. The IRS Chief Counsel's opinion reaches a different conclusion regarding IRC § 4975(d)(13), 26 U.S.C. § 4975(d)(13): "for purposes of meeting the exemption under [IRC] § 4975(d)(13) the definition of 'qualifying employer securities' in [ERISA] § 407(d)(5) controls." IRS Chief Counsel Advice 200109010, 2001 WL 206410 (Nov. 24, 2000). The opinion from the Department of Labor is in accord with that second conclusion. DOL Advisory Opinion No. 96-08A, 1996 WL 355576 (June 26, 1996). Thus, in effect ERISA uses the Tax Code's definition of "employer securities" and the Tax Code uses ERISA's definition of the term. However problematic this may be, it is consistent with the court's ruling. As explained, the IRS opinion's first conclusion is the same as the court's and its second conclusion, supported by the Department of Labor opinion, does not contradict the court's ruling.

For all these reasons, the court declines to revisit its earlier determination that the "employer securities" purchased by an ESOP must meet the definition of that term in IRC § 409(l), 26 U.S.C. § 409(l). That is, they must be "common stock issued by the employer . . . which is readily tradable on an established securities market." *Id.* § 409(l)(1).[1]

---

[1] Plaintiffs also point to language in the document establishing the ESOP that seems to adopt a similar requirement: "For purposes of the Plan, the term '*Company Stock*' shall mean common stock issued by a Controlled Group Member that is readily tradable on an established securities market." (Tribune Employee Stock Ownership Plan § 5.1, Ex. 20 to Defs' Memo in Support of Mot. to Dismiss, Dkt. No. 111.) That language is qualified, however, and because Plaintiffs did not mention it until their reply memorandum in support of summary judgment, the court

## II. Application of IRC § 409(l)

In its earlier order, the court suggested that the shares purchased by the ESOP were not "readily tradable" because although other Tribune stock was available for purchase on the market, the ESOP could not sell its own shares at the time of purchase. *Neil*, 677 F. Supp. 2d at 1027. GreatBanc contests that suggestion. (GreatBanc's Br., at 16-20.) GreatBanc first argues that even if the shares were not readily tradeable when they were acquired by the plan on April 1, 2007, they were readily tradable when they were first allocated to plan participants on April 1, 2008. (*Id.* at 16; Def's 56.1(C) ¶ 23.) This argument is unsatisfying because IRC § 409(l), 26 U.S.C. § 409(l), refers to stock that "is" readily tradable and not to stock that "will be" readily tradable. Moreover, GreatBanc has not explained why the plan participants' ability to trade the stock should be considered rather than the ability to trade of the ESOP itself, which was, after all, the entity that acquired the stock.

GreatBanc also brings the court's attention to twelve other ESOP transactions that have included transfers of unregistered securities to ESOPs. (GreatBanc's Br., at 16-17.) The fact that GreatBanc may not be the only ESOP to have failed to comply with statutory requirements does not change the court's analysis, however. Next, GreatBanc repeats an argument that the court considered in the earlier order, suggesting that the court adopt the IRS's reading of "readily tradeable" as meaning "publicly traded," as defined in 26 C.F.R. § 54.4975-7(b)(1)(iv). *See* I.R.S. Priv. Ltr. Rul. 200237026 (June 18, 2002). Under that regulation,

> "publicly traded" refers to a security that is listed on a national securities exchange registered under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f) or that is quoted on a system sponsored by a national securities association registered under section 15A(b) of the Securities Exchange Act (15 U.S.C. 78o).

GreatBanc contends that the ESOP's purchase satisfied the intent of this "publicly traded" rule. (GreatBanc's Br., at 18.) More important than the rule's intent, though, are its actual requirements,

---

will not rely on it. (Pls' Reply Br., at 2,7.)

none of which were met by the shares purchased. Thus, the court does not understand how the purchase could possibly have satisfied the rule's intent.

GreatBanc also seeks to rely on a Treasury Department regulation that contemplates the distribution to ESOP participants of employer securities that are either not publicly traded or are publicly traded but subject to a trading limitation. 26 C.F.R. § 54.4975-7(b)(10). That regulation is not inconsistent with the court's application of IRC 409(l), which applies to the securities purchased by the ESOP rather than to the securities distributed by the ESOP to plan participants.

Finally, GreatBanc returns to IRC § 4975(e)(7)(A), 26 U.S.C. § 4975(e)(7)(A), which requires that an ESOP be "designed to invest primarily in qualifying employer securities." Emphasizing the words "designed" and "primarily," GreatBanc suggests that an ESOP is not required to invest primarily in qualifying employer securities at all times. (GreatBanc's Br., at 21-22.) GreatBanc argues the ESOP satisfied § 4975(e)(7)(A) even if the securities were not qualifying employer securities when they were acquired because Tribune went private within months of the acquisition, thereby making the ESOP's shares qualifying employer securities, which the ESOP was designed to hold for a long period of time. GreatBanc's reading would treat the requirement that investments be primarily in qualifying employer securities as being aggregated over the life of the plan rather than as imposed at every single moment of the plan's life. That reading finds some support in a Department of Labor Advisory Opinion, which refers to the investment of plan assets in employer securities "over the life of the plan." DOL Advisory Opinion No. 83-6A, 1983 WL 22495 (Jan. 24, 1983). Ultimately, though, that letter does not address the situation presented in this case. The Advisory Opinion letter approves of a plan that requires 50 percent of its assets to be invested in qualifying employer securities at all times. *Id.* Thus, the opinion does not actually endorse an aggregation approach, and GreatBanc cites no other precedent in support of it. An aggregation approach is not the most natural reading of the statute. Moreover, such an approach would allow a trustee to engage in massive self-dealing for one day so long as the ESOP held a sufficient

8

amount of qualifying employer securities for every other day of the ESOP's life. Accordingly, GreatBanc's reading of § 4975(e)(7)(A) must be rejected. In the original stock purchase at issue in this case, the ESOP did not acquire *any* qualifying employer securities; it was not "designed to invest primarily in qualifying employer securities."

For all these reasons, the court finds that the ESOP's purchase of unregistered stock subject to a trading restriction did not meet the definition of "employer security" found in IRC § 409(l), 26 U.S.C. § 409(l), and that the purchase was, therefore, a transaction prohibited by ERISA.

## III.     Scienter Requirement

A fiduciary that engages in a transaction prohibited by ERISA § 406, 29 U.S.C.A. § 1106 is liable for a breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Neil*, 677 F. Supp. 2d at 1025 (citing *Harris Trust & Savings Bank v. Salomon Smith Barney*, 530 U.S. 238 (2000)). The portion of ERISA § 406 at issue here is the following:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

ERISA § 406(a)(1)(E); 29 U.S.C. § 1106(a)(1)(E). GreatBanc relies on the "knows or should know" language to argue that there is a genuine issue of fact as to whether it was aware that the transaction was prohibited by ERISA. (GreatBanc's Br., at 8-10.) Plaintiffs respond that they need show only that GreatBanc knew the details of the transaction, not that GreatBanc knew the transaction's legal status or had a subjective intent to engage in a prohibited transaction. (Pls' Reply Br., at 3-10.) As support, they rely on the Supreme Court's description of when a transferee—as opposed to a transferor fiduciary like GreatBanc—may be held liable for engaging in a prohibited transaction: "the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust*, 530 U.S. at

9

251.  The standard for establishing fiduciary liability cannot be higher than the standard of liability for a nonfiduciary.  The court agrees with Plaintiffs that they need only show that GreatBanc had actual or constructive knowledge of the deal's details.  That rule is required because § 406 defines *per se* rules.  *Id.* at 241-42 (explaining that § 406(a)(1) has the effect of "categorically barring certain transactions"); *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984).  Thus, the court will not impose a scienter requirement on § 406.  *Accord Chao v. Hall Holding Co.*, 285 F.3d 415, 439 (6th Cir. 2002).

The cases cited by GreatBanc are not to the contrary.  *O'Malley v. C.I.R.*, 972 F.2d 150, 154 (7th Cir. 1992) holds only that one who participates in a prohibited transaction but is not liable as a fiduciary under ERISA § 406, 29 U.S.C. § 1106, is still subject to taxation under IRC § 4975, 29 U.S.C. § 4975.  The opinion endorses a ruling of the tax court under which a fiduciary is liable under § 406 "'if he or she knowingly caused the plan to engage in a transaction which is described in section 406(a)(1),'" but says nothing about whether the "knowingly" requirement refers to  knowing the details of the transaction or to knowing the transaction's legal status.  *O'Malley* , 972 F.2d at 154 (quoting *O'Malley v. C.I.R.*, 96 T.C. 644, 650-51 (1991)).  GreatBanc also cites *Laborers' Pension Fund v. Arnold*, No. 00 C 4113, 2001 WL 197634, *8 (N.D. Ill. Feb. 27, 2001), where Judge Coar held that the plaintiffs had failed to state a claim against parties in interest under § 406(a) because the plaintiffs had alleged that the fiduciary did not become aware of the misconduct at issue until after it had occurred.  That case is distinguishable because here, though GreatBanc argues that it did not know that the transaction was prohibited, there is no doubt that it knew the transaction's details at the time it occurred.  And to the extent that the language of *Laborers' Pension Fund* suggests that such knowledge is insufficient to satisfy § 406(a), the court, for the reasons stated above, respectfully disagrees.  A plan fiduciary that knows the details of a prohibited transaction "knows or should know" that the transaction is prohibited.

Finally, GreatBanc cites *Kouba v. Joyce*, No. 83 C 451, 1987 WL 33370 (N.D. Ill. Dec. 31,

1987), which held that a plaintiff had failed to show that at the time fund trustees entered into a contingency fee agreement with counsel, the fund trustees knew or should have known that the agreement would provide unreasonable compensation. The court ruled that the trustees reasonably relied on expert opinions, and GreatBanc argues that it too reasonably relied on expert opinions. The difference between this case and *Kouba* is that the court in *Kouba* found that the agreement did not provide unreasonable compensation, so the expert opinions were correct. *Id.* at *8. Things are different here because the court has held that the transaction was a prohibited one, meaning that it was *per se* impermissible, so relying on legal opinions to the contrary was not reasonable. *See Keach v. U.S. Trust Co.*, 419 F.3d 626, 636-37 (7th Cir. 2005) (holding that fiduciary's acquisition of independent assessment is evidence of a thorough investigation but "is not a complete defense against a charge of imprudence"). In any event, the letter on which GreatBanc purports to rely states explicitly that it expresses no opinion about whether the shares are "employer securities" under IRC § 409(l). (K & L Gates Opinion Letter, April 1, 2007, at 2-3, GreatBanc's Ex. R.) Because GreatBanc knew the details of the transaction, it knew or should have known that it was prohibited by ERISA.

**IV.     Rule 56(f)**

GreatBanc next argues that granting summary judgment would be premature without more development of the factual record. (GreatBanc's Br., at 23-26.) GreatBanc relies on Federal Rule of Civil Procedure 56(f):

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) deny the motion;
> >
> > (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> >
> > (3) issue any other just order.

In support of its argument that further discovery is needed, GreatBanc draws an analogy to the

11

"step-transaction" doctrine applied to determine the tax consequences of a multi-step transaction. (GreatBanc's Br., at 24.) Determining the tax consequences of a multi-step transaction is readily distinguishable from the issue here: determining whether one step in a multi-step transaction was prohibited under ERISA. GreatBanc says that it needs to find expert opinions on the issue, but expert opinions cannot substitute for legal precedent. And GreatBanc cites no legal precedent to suggest that a transaction prohibited by ERISA can be excused so long as it is part of a multi-step transaction that includes many steps that are not prohibited by ERISA.

GreatBanc also argues that further discovery will show that IRC § 409(l)(1) does not apply to the ESOP transaction. (GreatBanc's Br., at 25.) It asserts that further discovery will show that IRC § 409(l)(2) should be applied. That provision is a special rule that applies if there is no readily tradable common stock, but it is undisputed that at the time the ESOP acquired the shares in Tribune, other shares in the company were being traded on the market. (Pls' 56.1(a)(3) Statement ¶ 13.) GreatBanc fails to explain the basis for its argument to the contrary.

Last, GreatBanc asserts that it should be permitted further discovery that would allow it to discover legal opinions upon which the credit agreement was based, to develop a record of the factual premises of opinions that concluded that no prohibited transaction occurred, and to develop expert testimony on relevant ESOP custom or practice. (GreatBanc's Br., at 23-24.) The Credit Agreement, which allowed Tribune to borrow about $8 billion for the stock buyback, required Tribune to obtain a determination letter from the IRS. Assuming that such a letter was ever obtained, and assuming that the letter addressed the ESOP's stock purchase, it could not have influenced GreatBanc's decision to agree to the stock purchase because the purchase predated the credit agreement. An IRS determination letter might contain persuasive legal authority, but a need for further legal research is not a proper basis for a Rule 56(f) request. Finally, no discovery is necessary with respect to legal opinions and general industry practice because, as already explained, such evidence cannot trump the legal conclusion that the ESOP's purchase of

12

unregistered stock subject to a trading restriction was a prohibited transaction under ERISA. Accordingly, GreatBanc's request for further discovery is denied.

## V. Tribune's Bankruptcy Proceedings

GreatBanc's final argument in opposition to Plaintiffs' motion for summary judgment is that the motion cannot be adjudicated in the absence of Tribune Company, which cannot be joined due to ongoing bankruptcy proceedings. (GreatBanc's Br., at 27-29.) Under Federal Rule of Civil Procedure 19, a case should be dismissed in certain circumstances if a party that is required to be joined if feasible cannot be joined. GreatBanc argues that Tribune is a party that is required to be joined if feasible because a ruling that some part of the leveraged ESOP transaction was a prohibited transaction could expose Tribune to ERISA or tax liability. GreatBanc is correct that in an action to set aside a contract, all parties to the contract are required to be joined if feasible. *U.S. ex rel. Hall v. Tribal Development Corp.*, 100 F.3d 476, 479 (7th Cir. 1996). Plaintiffs' motion for summary judgment, however, does not seek to set aside a contract. It seeks damages for GreatBanc's fiduciary breach under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). Relief under that section is available only from a fiduciary, and Tribune is not a fiduciary. GreatBanc has not explained why Tribune will not be able to protect its interests if the court rules in its absence. The court's ruling will not bind Tribune in a later case about liability under ERISA or the Tax Code. Accordingly, GreatBanc's Rule 19 argument is rejected. The court notes the contrast between its ruling on this claim for legal relief against GreatBanc and the claims for equitable relief against Defendants Samuel Zell and EGI-TRB. *Neil v. Zell*, No. 08 C 6833, 2010 WL 3167293 (N.D. Ill. Aug. 9, 2010).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment on Unregistered Stock Prohibited Transaction Claim against Defendant GreatBanc [187] is granted.

ENTER:

Dated: November 9, 2010  
_____  
REBECCA R. PALLMEYER  
United States District Judge